# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8041 PA (ASx) | Date | February 23, 2018 |
|---|---|---|---|
| Title | The Carsey-Werner Company, LLC v. British Broadcasting Corporation, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| Kamilla Sali-Suleyman | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   IN CHAMBERS – COURT ORDER

Before the Court are Motions to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction and/or Improper Venue Under F.R.C.P. 12(b)(2) or (3), filed by defendants Sugar Films Limited ("Sugar Films") (Docket No. 25) and British Broadcasting Corporation ("BBC") (collectively "Defendants") (Docket No. 28). Plaintiff, The Carsey-Werner Company, LLC ("Plaintiff"), filed one opposition addressing both motions. (Docket No. 46.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds these matters appropriate for decision without oral argument. The hearing calendared for February 26, 2018, is vacated, and the matters taken off calendar.

**I.   Factual and Procedural Background**

Plaintiff is a television company that, between 1983 and 2005, produced several television series including Roseanne, 3rd Rock from the Sun, That '70s Show, Grace Under Fire, and The Cosby Show. (First Amended Complaint ("FAC") ¶ 5, Docket No. 16.) Plaintiff no longer produces new shows, instead distributing and licensing programs and clips from its catalogue. (Id. ¶¶ 19-20.) Plaintiff has registered and owns copyrights in each of those programs. (Id. ¶ 5.) Plaintiff holds copyright registrations numbered PA 265-861, 2294-411, and 297-567 for The Cosby Show. (Id. ¶¶ 16, 18.)

BBC, a United Kingdom corporation, owns, produces, broadcasts, and distributes television programs around the world. (FAC ¶ 6.) Sugar Films, a United Kingdom private limited company, produces television programs. (Id. ¶ 8.) This case revolves around a program produced by Sugar Films, which BBC is alleged to have produced the budget for, financed, and broadcast. (Id. ¶¶ 9, 11-12.) In 2017, Sugar Films produced a one-hour program titled Bill Cosby – Fall of an American Icon (the "Program") about Bill Cosby's alleged sexual assaults. (Id. ¶¶ 9, 21.) The Program included eight audiovisual clips and two musical cues from The Cosby Show adding up to 234 seconds, or about 6.5% of the Program's total running time. (Id. ¶¶ 9, 22-26.) The clips and musical cues were used without Plaintiff's permission. (Id. ¶¶ 9, 26-27.) The Program also includes interviews with 11 individuals and several location shots of locations within the County of Los Angeles. (Id. ¶ 11.)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8041 PA (ASx) | Date | February 23, 2018 |
|---|---|---|---|
| Title | The Carsey-Werner Company, LLC v. British Broadcasting Corporation, et al. | | |

  The Program was first publicly broadcast by BBC on its BBC2 channel on June 5, 2017, which is the same day that Cosby's prosecution for a sexual assault began in Pennsylvania. (FAC ¶¶ 12, 21.) Defendants had publicized the Program for months before the broadcast, resulting in articles about the Program in print and online media in the United Kingdom and abroad. (Id. ¶¶ 12, 21.) The Program was broadcast again on BBC on June 7, 2017. (FAC ¶ 12.) Afterward, BBC made the Program available for viewing for 30 days on its iPlayer website, where BBC streams programs. (Id. ¶¶ 6, 12.) During those 30 days, the Program could be viewed by persons in the United States using virtual private networks ("VPNs") or proxy servers. (Id. ¶ 12.) According to the FAC, BBC knew in 2015 that at least 65 million people outside of the United Kingdom used VPNs or proxy servers to access its iPlayer website, and BBC knew or should have known that the number was higher in June 2017. (Id. ¶ 13.) The FAC alleges that "given the California-centric nature of [the Program], and Defendants' publicity campaign, it was a predictable consequence of BBC's decision to distribute [the Program] via the iPlayer that numerous individuals located in California, and an even larger number of people located elsewhere in the USA, would access that website to view [the Program]." (Id. ¶ 13; see also id. ¶ 14.)

  The same day of the first broadcast, June 5, 2017, Plaintiff sent an electronic notice to BBC that the Program infringed Plaintiff's copyrights in The Cosby Show, and Plaintiff sent a similar email to Sugar Films the next day. (FAC ¶ 14.) On June 12, Defendants responded separately to Plaintiff's communications denying liability. (Id.) On June 20, Plaintiff sent Sugar Films a letter asserting copyright infringement and demanding a licensing fee, but Sugar Films denied liability and refused to pay. (Id.) The Program remained available for public viewing on BBC's iPlayer website until approximately July 4. (Id.)

  Plaintiff filed its original complaint on November 3. (Docket No. 1.) On December 13, before either Defendant responded, Plaintiff filed the FAC. (Docket No. 16.) The FAC asserts claims for copyright infringement, common law misappropriation, and violation of California Business and Professions Code section 17200 et seq. (Id. ¶¶ 29-43.) Sugar Films filed its motion on January 5, and BBC filed its motion on January 11. The Court consolidated the briefing schedule for the two motions (Docket No. 38), and Plaintiff filed its opposition on February 5. Defendants filed their reply on February 12.

**II. Legal Standards for Personal Jurisdiction**

  A defendant may move to have a complaint dismissed for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing personal jurisdiction. Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995). If a court has not heard testimony or made factual determinations, however, the plaintiff must only make a prima facie showing of personal jurisdiction. Id. The plaintiff may use affidavits of knowledgeable witnesses in meeting its burden of proving jurisdiction. Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). In determining whether the plaintiff has met this burden, a court must take the allegations in the plaintiff's

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8041 PA (ASx) | Date | February 23, 2018 |
|---|---|---|---|
| Title | The Carsey-Werner Company, LLC v. British Broadcasting Corporation, et al. | | |

complaint as true and resolve disputed jurisdictional facts in the plaintiff's favor. Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588-89 (9th Cir. 1996).

Before this Court can exercise jurisdiction, an applicable state rule or statute must potentially confer personal jurisdiction over the out-of-state defendant. Fed. R. Civ. P. 4(k). The California long-arm statute provides that a court may exercise jurisdiction on any basis not inconsistent with the State Constitution or the Constitution of the United States. Cal. Civ. Proc. Code § 410.10. Section 410.10 thus imposes limits on the power of California courts to exercise personal jurisdiction that are "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." Data Disc, 557 F.2d at 1286 (quoting Republic Int'l Corp. v. Amco Eng'rs, Inc., 516 F.2d 161, 167 (9th Cir. 1975).

A defendant's activities involving the forum state should be such that the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Courts have adopted a two-tiered approach to analyze whether a non-resident defendant's contacts with the forum state are sufficiently substantial so as to comport both with the Constitution and with traditional notions of fair play and substantial justice. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). This two-tiered approach involves a determination of whether a court has general or specific jurisdiction over a defendant. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).

**A.     General Jurisdiction**

General jurisdiction exists when there are "substantial" or "continuous and systematic" contacts with the forum state, even if the cause of action is unrelated to those contacts. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). The contacts with the forum state must be of a sort that "approximate physical presence." Id.; see also Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) ("This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." (citing Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986))).

The Ninth Circuit has concluded that "the parent-subsidiary relationship does not on its own establish two entities as 'alter egos,' and thus does not indicate that general jurisdiction over one gives rise to general jurisdiction over the other." Williams v. Yamaha Motor Co., 851 F.3d 1015, 1021 (9th Cir. 2017). Instead, "'the alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate.'" Id. (quoting Ranza v. Nike, Inc., 793 F.3d 1059, 1073 (9th Cir. 2015)). To obtain general personal jurisdiction over a foreign affiliate based on the presence in the forum of a domestic affiliate, "a plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8041 PA (ASx) | Date | February 23, 2018 |
|---|---|---|---|
| Title | The Carsey-Werner Company, LLC v. British Broadcasting Corporation, et al. | | |

must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." Id. (quoting Ranza, 793 F.3d at 1073).

    **B.**    **Specific Jurisdiction**

Specific personal jurisdiction may be exercised when the "nature and quality" of the defendant's contacts with the forum state are significant in relation to the specific cause of action. Data Disc, 557 F.2d at 1287. In order for the forum state to properly assert jurisdiction over an out of state defendant, the defendant must have purposefully directed its activities towards residents of the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Further, the forum-related activities must be related to the claim, and the exercise of jurisdiction must be reasonable. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). The Ninth Circuit has developed a three-part test for assessing the exercise of specific personal jurisdiction over a party:

    (1)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

    (2)    The claim must be one which arises out of or relates to the defendant's forum-related activities; and

    (3)    The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)); see Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988). "The plaintiff bears the burden of satisfying the first two prongs of the test. . . . If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 476-78).

A "purposeful availment" analysis is usually used in suits sounding in contract while a "purposeful direction" analysis is typically employed in a tort action. Schwarzenegger, 374 F.3d at 802. A defendant purposefully avails himself of the privilege of conducting activities in the forum by deliberately "engag[ing] in significant activities within a State or [creating] 'continuing obligations' between himself and the residents of the forum." Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8041 PA (ASx) | Date | February 23, 2018 |
|---|---|---|---|
| Title | The Carsey-Werner Company, LLC v. British Broadcasting Corporation, et al. | | |

760 (9th Cir. 1990) (quoting Burger King, 471 U.S. at 475-76).  Purposeful availment "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." Schwarzenegger, 374 F.3d at 802.  The purposeful direction test applied in tort cases applies the "effects" test derived from Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), and requires "that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing Bancroft & Masters, 223 F.3d at 1087; Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995)).

      The second requirement that the "claim must be one which arises out of or relates to the defendant's forum-related activities" is met if the plaintiff would not have been injured "but for" the defendant's activities.  Panavision, 141 F.3d at 1322.  Finally, the third "reasonableness" prong is satisfied when the following factors weigh in favor of the exercise of jurisdiction over a nonresident defendant:

      (1)    The extent of purposeful interjection into the forum state;
      (2)    The burden on the defendant of defending in the forum;
      (3)    The extent of conflict with the sovereignty of defendant's state;
      (4)    The forum state's interest in adjudicating the dispute;
      (5)    The most efficient judicial resolution of the controversy;
      (6)    The importance of the forum to plaintiff's interest in convenient and effective relief; and
      (7)    The existence of an alternative forum.

FDIC v. British-Am. Ins. Co., 828 F.2d 1439, 1442 (9th Cir. 1987) (citing Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir. 1986); Lake, 817 F.2d at 1421-22; Corp. Inv. Bus. Brokers v. Melcher, 824 F.2d 786, 790 (9th Cir. 1987)).

**III.**    **Evidentiary Issues**

      Plaintiff requests that the Court take judicial notice of complaints filed by BBC in this District in two other, unrelated cases. (Docket Nos. 42, 42-1, 42-2.)  Defendants oppose Plaintiff's request, arguing that the documents are irrelevant. (Docket No. 52 at 2.)  Although the documents offered by Plaintiff are appropriate subjects of judicial notice, the Court agrees with Defendants that they are not relevant and denies Plaintiff's request.  See Bryant v. Mickelsen, 551 F. App'x 348, 349 (9th Cir. 2014); Calop Bus. Sys., Inc. v. City of Los Angeles, 984 F. Supp. 2d 981, 993 (C.D. Cal. 2013).

      The parties have submitted various evidentiary objections.  Those objections are overruled as moot to the extent they concern evidence not discussed herein.  The Court addresses other objections as necessary below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8041 PA (ASx) | Date | February 23, 2018 |
|---|---|---|---|
| Title | The Carsey-Werner Company, LLC v. British Broadcasting Corporation, et al. | | |

**IV.     Discussion**

Plaintiff does not contend that either Defendant is subject to general jurisdiction (Opp'n at 1, 6), so the Court considers only whether it has specific jurisdiction over Defendants.  Because the case centers on allegations of copyright infringement, the Court applies a purposeful-direction analysis.  See, e.g., Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1069 (9th Cir. 2017).

**A.     Purposeful Direction Analysis**

1.     The Parties' Arguments and Evidence

Sugar Films argues that it did not commit any intentional, wrongful act expressly aimed at California, explaining that it "licensed [the Program] to BBC to be distributed solely within the U.K.  No authorized distribution of [the Program] was ever made into or within California.  Any posting or distribution of [the Program] on YouTube, on other websites or via some other service that might be accessed by U.S. residents is completely unauthorized by Sugar Films, and Sugar Films takes reasonable efforts to seek the removal of such unauthorized content when it becomes aware that its copyrights are being infringed."  (Sugar Films Mem. P. & A. at 8, Docket No. 25-1; see Younge Decl. ¶¶ 4-5, Docket No. 25-4.)

BBC argues that individuals in the United States could only access BBC's iPlayer website to view the Program using VPNs or proxy servers to defeat BBC's restrictions on viewing outside of the United Kingdom.  (BBC Mem. P. & A. at 9, Docket No. 29 (citing FAC ¶ 12).)  According to BBC, this shows that it did not direct its conduct toward California.  (Id. at 9.)  BBC disputes Plaintiff's allegations of BBC's knowledge of the use of VPNs and proxy servers in 2015, arguing that between then and the release of the Program on BBC's iPlayer website in June 2017, BBC took additional steps to prevent unauthorized access to the website.  (Id. at 9 n.4; see Gledhill Decl. ¶ 9, Docket No. 31.)  BBC also argues that even if it was foreseeable that California residents would use its iPlayer to view the Program, that does not amount to BBC's having purposefully directed its activities at California.  (Id. at 10.)

BBC has provided a declaration by Mark Gledhill, BBC's Software Engineering Manager, who is "responsible for maintaining the software that provides the Internet Protocol (IP) Geo-location and Virtual Private Network (VPN) blocking services used for the BBC iPlayer service."  (Gledhill Decl. ¶¶ 1, 3.)  Gledhill states that audio-visual content on BBC's iPlayer service is restricted to residents in the United Kingdom, and that BBC "takes active steps to prevent access to the iPlayer service from outside the United Kingdom" through various technological means.  (Gledhill Decl. ¶ 5-8, 10; Gledhill Decl. Ex. A, Docket No. 31-1; see also Illenden Decl. ¶ 9, Docket No. 32.)  The use of BBC's iPlayer service outside of the United Kingdom also violates BBC's terms and conditions for the service, which are available on the internet.  (Illenden Decl. ¶ 10; see Illenden Decl. Ex. A, Docket No. 31-1.)  The iPlayer website specifically prohibits the use of VPNs to watch content from outside of the United Kingdom.  (Illenden Decl. ¶ 10; see Illenden Decl. Ex. B, Docket No. 31-2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8041 PA (ASx) | Date | February 23, 2018 |
|---|---|---|---|
| Title | The Carsey-Werner Company, LLC v. British Broadcasting Corporation, et al. | | |

Plaintiff contends that the "effects" test is satisfied. (Opp'n at 7-10.) According to Plaintiff, Defendants committed intentional acts by ripping material from a DVD of The Cosby Show, editing that material into the Program, traveling to Los Angeles to film interviews and locations for the Program, and approving the budget for and financing the production. (Id. at 7.) Plaintiff argues that the "express aiming" requirement is satisfied because this is a case of willful copyright infringement, and that the Defendants are otherwise linked to the forum because of the trips to Los Angeles for filming, for which Sugar Films was responsible and which BBC "actively assisted by approving the budget which must have included travel and filming costs, and by financing the production." (Id. at 7-10; see Rufus-Isaacs Decl. ¶ 2, Docket No. 40.) Plaintiff argues that Defendants knew that Plaintiff is a California company and that it owned copyrights in the Cosby Show material used in the Program. (Opp'n at 3-4; see Acland Decl. ¶¶ 5-10, Docket No. 41; Acland Decl. Exs. 10-14, Docket Nos. 41-4 to 41-8; Rufus-Isaacs Decl. ¶ 2.) Finally, Plaintiff argues that it "suffered harm in California because its copyrighted material was taken without its consent and without payment, and it therefore lost license fees," and because "it lost control of its copyrighted property." (Opp'n at 10; see Acland Decl. ¶ 11.)

Plaintiff argues that despite BBC's efforts to restrict access to its iPlayer service to United Kingdom viewers, "it is reasonable to infer that [the Program] was watched by many other individuals located in USA/California," although "it is impossible to determine how many people in the USA or California viewed [the Program] via the iPlayer." (Opp'n at 4-5.) Plaintiff refers to a 2015 article that estimated that 65 million people, or 29% of iPlayer users, were located outside of the United Kingdom. (Opp'n at 4-5 (citing Rufus-Isaacs Decl. Ex. 4, Docket No. 40-1).)[1] Plaintiff then refers to more recent usage data from BBC about its iPlayer service, covering the time period that the Program was made available on the service,[2] and argues that "[e]specially given the increased use of VPN's, it would be

---

[1] Plaintiff submits a July 22, 2015 BBC news article describing a third-party report stating that 65 million individuals outside of the United Kingdom used VPNs or proxy servers to watch programs on the iPlayer service. Defendants object to the article as violating the best evidence rule, lacking foundation, and hearsay. The primary importance of the article is what it shows about BBC's awareness of how its iPlayer service was being used, so at least to that extent, Defendants' objections are overruled. The Court also notes that essentially the same information was alleged in the FAC and must be credited for purposes of Defendants' motions. See Am. Tel. & Tel. Co., 94 F.3d at 588-89.

[2] Plaintiff provides BBC "Performance Reports" for each of June and July 2017 that include iPlayer usage data (Rufus-Isaacs Decl. ¶¶ 6-7; Rufus-Isaacs Decl. Exs. 5 & 6, Docket Nos. 40-2, 40-3), although Plaintiff does not use information from them in any calculation of iPlayer usage outside the United Kingdom. The Court notes, though, that both documents state that "[a]ll data is for the UK only." (Rufus-Isaacs Decl. Ex. 5 at 9; Rufus-Isaacs Decl. Ex. 6 at 9.) The 2015 BBC news article submitted by Plaintiff explains that the report on international iPlayer usage was based on surveys of

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8041 PA (ASx) | Date | February 23, 2018 |
|---|---|---|---|
| Title | The Carsey-Werner Company, LLC v. British Broadcasting Corporation, et al. | | |

reasonable to infer that even more people were watching the iPlayer from outside the UK in these 2 months." (Opp'n at 4-5.) Norma Acland, Plaintiff's General Counsel, states in her declaration that "[i]n June-July 2017, while [she] was in Los Angeles County, [she] used a virtual private network on several occasions to access the BBC iPlayer, on which [she] watched [the Program]." (Acland Decl. ¶ 10.)

In their reply, Defendants argue that willful copyright infringement and knowledge of the copyright owner's residence are no longer sufficient to demonstrate "express aiming" and therefore do not establish purposeful direction. (Reply at 3 (citing Axiom Foods, 874 F.3d 1064).) Defendants reiterate that unauthorized use of its iPlayer service does not demonstrate that they purposefully directed their conduct toward California, and they contend that their maintenance of a passive service on which users could view programs is not sufficient, either. (Id. at 3-5.) Defendants also argue that Plaintiff has not proved that any intentional act on their part caused harm in California. (Id. at 5.)

    2.    <u>Analysis</u>

Sugar Films copied Plaintiff's copyrighted materials and inserted them into the Program, and BBC broadcast the Program on its television channels and online. These qualify as intentional acts for purposes of the purposeful direction test. See, e.g., Axiom Foods, 873 F.3d at 1069.

As for the second element of the test, in the past, the Ninth Circuit held that the "express aiming" requirement was satisfied by a defendant's "individualized targeting," or wrongful conduct targeted at a plaintiff whom the defendant knew to be a resident of the forum state. Axiom Foods, 873 F.3d at 1069 (citing Wash. Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 671 (9th Cir. 2012); Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1130 (9th Cir. 2010)). " In the context of copyright infringement, [the Ninth Circuit had] held that a defendant's 'alleged willful infringement of [a plaintiff's] copyright, and its knowledge of both the existence of the copyright and the forum of the copyright holder,' established 'individualized targeting.'" Id. (quoting Wash. Shoe, 704 F.3d at 678-79). However, in light of the Supreme Court's decision in Walden v. Fiore, __ U.S. __, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014), the Ninth Circuit recently explained that "mere satisfaction of [that] test[,] . . . without more, is insufficient to comply with due process." 873 F.3d at 1070. "[W]hile a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what Walden requires." Id. Thus, a court "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." Id. (quoting Walden, 134 S. Ct. at 1124-25).

---

    [2]/(...continued)
users, including international users (see Rufus-Isaacs Decl. Ex. 4; see also Opp'n at 5), so it does not appear that the report's figures for international usage could be applied to the Performance Reports' data. The Court also notes that the Performance Reports include viewership data for some particular programs, but there is no specific data about the Program. (See Rufus-Isaacs Decl. Exs. 5 & 6.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8041 PA (ASx) | Date | February 23, 2018 |
|---|---|---|---|
| Title | The Carsey-Werner Company, LLC v. British Broadcasting Corporation, et al. | | |

Plaintiff provides evidence of, and Defendants do not contest, Defendants' knowledge of Plaintiff's copyright ownership or location. The Court therefore assumes that Defendants knew both that the material used in the Program from The Cosby Show was copyrighted by Plaintiff and that Plaintiff is located in southern California. See Am. Tel. & Tel. Co., 94 F.3d at 588-89; see also Warner Bros. Home Entm't Inc. v. Jimenez, No. CV 12-9160 FMO (JEMx), 2013 WL 3397672, at *2 (C.D. Cal. July 8, 2013) (willful infringement shown where television program's packaging had copyright notice and plaintiff's address in California). But even if Defendants committed what otherwise would be willful copyright infringement, Defendants' conduct still lacks sufficient ties to California to subject them to personal jurisdiction in this Court.

That some California individuals may have viewed the Program does not establish that Defendants directed their conduct toward California, particularly because any viewership in California occurred despite Defendants' intentions and their efforts to prevent it. The "personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum." Picot v. Weston, 780 F.3d 1206, 1214 (9th Cir. 2015). At most, Defendants maintained a passive website that was accessible to California residents, and that "alone cannot satisfy the express aiming prong," Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1229 (9th Cir. 2011), let alone provide the greater showing now required. Defendants have offered evidence, and Plaintiff does not dispute, that "BBC did not direct any of its informational trailers about the program toward California residents," and that "BBC generally does not promote or advertise in any publications that are intended to reach California residents." (Illenden Decl. ¶ 12.) More importantly, BBC implemented technology and had in place terms of use to prevent California viewers from accessing the Program. That those efforts may not have been completely effective does not amount to purposeful direction. Cf. Triple Up Ltd. v. Youku Tudou Inc., 235 F. Supp. 3d 15, 25 (D.D.C. 2017) ("[T]he proposition that a website's affirmative geoblocking efforts should weigh against the exercise of personal jurisdiction is unobjectionable."). Unauthorized viewers outside of the United Kingdom do not provide a basis for personal jurisdiction; rather, Defendants' relationship with California must arise out of contacts that they themselves created with the state. See Walden, 134 S. Ct. at 1122; Axiom Foods, 874 F.3d at 1070. The Court also notes that any viewership of the Program in California provides no basis for asserting personal jurisdiction over Sugar Films, as BBC was responsible for the distribution of the Program. See Dos Santos v. Telemundo Cmmc'ns Grp., LLC, No. SACV 12-1373 JVS (MLGx), 2012 WL 9503003, at *6-7 (C.D. Cal. Dec. 19, 2012) (acts of allegedly infringing program's distributor not attributed to its producer).

Moreover, Plaintiff neither alleges nor offers actual evidence of the extent of viewership of the Program in California. Plaintiff provides proof of only one person in California (Acland) who viewed the Program on BBC's iPlayer service. Plaintiff's arguments about California viewership are speculative and are based almost entirely on a 2015 news article, since the time of which BBC improved the iPlayer's location-based viewership restrictions. The Court cannot conclude on this showing that California is the focal point of the Program and any harm suffered by Plaintiff. See Axiom Foods, 874 F.3d at 1070-71.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8041 PA (ASx) | Date | February 23, 2018 |
|---|---|---|---|
| Title | The Carsey-Werner Company, LLC v. British Broadcasting Corporation, et al. | | |

The Court is not persuaded by Plaintiff's argument that the Program is so "California-centric" as to supply the "something more" required to turn BBC's release of the Program on its iPlayer service into conduct targeting California. The fact that Defendants sought to create the Program for distribution entirely in the United Kingdom, and took active measures to prevent viewership elsewhere, suggests that the Program was not as California-focused as Plaintiff's contend. Moreover, even if it was foreseeable that individuals in California might be interested in the program, "[t]he foreseeability of injury in a forum 'is not a "sufficient benchmark" for exercising personal jurisdiction.'" Axiom Foods, 874 F.3d at 1070 (quoting Burger King, 471 U.S. at 474; and citing Wash. Shoe, 704 F.3d at 675).

Sugar Films's interviews and filming of location shots in Los Angeles also are not sufficient to subject it to personal jurisdiction in this District. Those activities, which are not the basis for the alleged copyright infringement, did not make California the focus of the Program. Considering the full context of this case, the mere filming of some portions of the Program in California does not demonstrate that Sugar Films directed its conduct toward the state. See Walden, 134 S. Ct. at 1121 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." (emphasis added)).

Finally, the Court has not been presented with any basis for asserting specific personal jurisdiction over either Defendant due to the conduct of related corporate entities. See Axiom Foods, 874 F.3d at 1071 & n.5.

Because Plaintiff fails to satisfy the second prong of the purposeful direction test, the Court need not proceed to the third prong; the Court lacks specific jurisdiction over Defendants. See Axiom Foods, 874 F.3d at 1071 n.6 (citing Picot, 780 F.3d at 1215 n.4).

> **B.** **Personal Jurisdiction Under Federal Rule of Civil Procedure 4(k)(2)**

Federal Rule of Civil Procedure 4(k)(2) provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> > (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> >
> > (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8041 PA (ASx) | Date | February 23, 2018 |
|---|---|---|---|
| Title | The Carsey-Werner Company, LLC v. British Broadcasting Corporation, et al. | | |

Plaintiff argues that if "either Defendant's contacts with California alone are insufficient to create jurisdiction," personal jurisdiction is established under Rule 4(k)(2). (Opp'n at 6.) Plaintiff contends that the Rule applies because "[n]o claim of general jurisdiction is made and aggregation is not forbidden," and that therefore "for jurisdictional purposes, the Court should take all of Defendants' nationwide contacts into consideration, not just their contacts with California." (Id.)

Rule 4(k)(2) has three requirements: (1) "the claim against the defendant must arise under federal law"; (2) "the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction"; and (3) "the federal court's exercise of personal jurisdiction must comport with due process." Axiom Foods, 874 F.3d at 1072 (quoting Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1159 (9th Cir. 2006)). "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." Id. (quoting Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 462 (9th Cir. 2007)). In the Ninth Circuit, Rule 4(k)(2) is applied sparingly. See Holland Am. Line, 485 F.3d at 462.

Plaintiff asserts a claim for copyright infringement, satisfying Rule 4(k)(2)'s first requirement at least for that claim. See Axiom Foods, 874 F.3d at 1072.

Plaintiff's assertion that it does not make a claim of general jurisdiction does not directly address the Rule 4(k)(2) inquiry. However, "[i]n the Ninth Circuit a defendant bears the burden of identifying another state where they are subject to personal jurisdiction," and Defendants have not identified such a state. L.A. Gem & Jewelry Design, Inc. v. An & Assocs. Co., No. CV17-2417-CAS(JEMx), 2017 WL 6209816, at *7 (C.D. Cal. Dec. 6, 2017). As a result, Rule 4(k)(2)'s second requirement also is satisfied. See id.; see also Holland Am. Line, 485 F.3d at 461-62.

However, the third requirement for application of Rule 4(k)(2) is not satisfied here. Other than a passing reference to filming trips to other locations in the United States during the production of the Program and conclusory assertions that it is "reasonable to infer that [the Program] was watched by many . . . individuals in the USA/California" (Opp'n at 2, 5), Plaintiff does not allege, let alone provide evidence of, any contacts between Defendants and the United States beyond those discussed above for California. The Court's previous analysis largely applies here. Plaintiff's speculations about United States viewers of the Program outside of California are insufficient to establish jurisdiction. More importantly, any individuals in the United States who viewed the Program using the iPlayer service did so without Defendants' authorization and despite Defendants' preventative efforts. Plaintiff fails to establish that Defendants purposefully directed their activities toward the United States.

      **C.**    **Jurisdictional Discovery**

Plaintiff mentions jurisdictional discovery only in passing, including in its opposition a single-sentence request for discovery "if the Court believes that there are factual issues that would assist

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8041 PA (ASx) | Date | February 23, 2018 |
|---|---|---|---|
| Title | The Carsey-Werner Company, LLC v. British Broadcasting Corporation, et al. | | |

it in making a ruling." (Opp'n at 15.) Plaintiff does not explain what discovery it would conduct or why it would be helpful. A court may properly deny a request for jurisdictional discovery that is "based on little more than a hunch that it might yield jurisdictionally relevant facts." Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (citing Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986)). The Court also need not permit discovery when it is based on speculation that contradicts actual evidence. See Pebble Beach Co., 453 F.3d at 1160 ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery . . . .") (quoting Terracom v. Valley Nat'l Bank, 49 F.3d 555, 562 (9th Cir. 1995)). Because Plaintiff fails to demonstrate what discovery could uncover that would establish personal jurisdiction in light of the Court's analysis, Plaintiff's request for discovery is denied. See Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977) ("[A] refusal [to permit jurisdictional discovery] is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.").

## Conclusion

For all of the foregoing reasons, the Court grants in part Defendants' Motions to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction and/or Improper Venue Under F.R.C.P. 12(b)(2) or (3) due to a lack of personal jurisdiction over Defendants. The Court denies as moot Defendants' requests to dismiss for improper venue. This action is dismissed without prejudice.

IT IS SO ORDERED.